## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

DORITA CLAY,                                    :

      Plaintiff,                              :

vs.                                            :           CA 17-0398-CG-MU

WELLS FARGO BANK, et al.,                       :

      Defendants.

## REPORT AND RECOMMENDATION

This action is before the undersigned for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on the notice of removal (Doc. 1), Plaintiff's motion to remand (Doc. 7), the Defendants' response in opposition (Doc. 9), and Plaintiff's reply (Doc. 13). Upon consideration of all relevant pleadings in this case, the undersigned recommends that the Court **GRANT** Plaintiff's motion to remand (Doc. 7).

## FINDINGS OF FACT

The undersigned finds that the following facts are both undisputed and relevant to consideration of the motion to remand. Dorita Clay filed a two-count complaint against Wells Fargo Bank and Uleter Nix in the Circuit Court of Dallas County, Alabama on August 2, 2017—Count 1 alleging invasion of the right to privacy under the common law of Alabama[1] and Count 2 alleging breach of fiduciary duty[2]—which arises from the

---

[1]     In this count, Plaintiff avers that the Defendants operated in conjunction and in concert with an unnamed federal agent to "tortuously invade[] and violate[] [her] right to privacy, under the common law of the state of Alabama." (Doc. 1, Exhibit 1, COMPLAINT, at ¶ 13.)

Defendants' disclosure/display of Plaintiff's private banking/financial information to a minimum of 8-10 unidentified third parties/public sources in the Dallas County community. (*See* Doc. 1, Exhibit 1, COMPLAINT, at 1-4.)

   5.   The Plaintiff Clay opened up a checking and saving account at the Defendant Bank on or about January 22, 2016.

   6.   Plaintiff avers that on or about February 2, 9, 16, and 23 of 2017 and March 2, 2017, and on March 9, 2017[,] the Defendant Bank and Nix, without responding to a subpoena or warrant or other appropriate process, and without notification to the Plaintiff, caused Plaintiff's financial information, including all her checks, deposits, and transactions in said account, to be viewed by a federal investigator without authority from Plaintiff at either the Defendant Bank or at various other locations at the Selma main office of the Defendant Bank. Defendants also allowed said federal agent to return to the bank on March 2, 9, and 16, on site and off site, to meet Ms. Nix, who shared private information concerning the Plaintiff.

   7.   Plaintiff avers that, on information and belief, the Defendant Nix, acting on behalf of the Defendant Bank, actually transported copies of Plaintiff's checks, deposits, and transactions to a federal agent, either at the Bank . . . or at another location[] outside the Bank.

   8.   Plaintiff also avers that the Defendants, acting together with the federal agent, also caused Plaintiff's bank records to be displayed to other third parties without Plaintiff's knowledge or permission.

   9.   Plaintiff discovered from a third party and/or a third party's mother, that the Defendants Bank and Nix had provided Plaintiff's banking information not only to the federal agent, but also additional third parties without Plaintiff's knowledge or permission.

   10.   On or about June 13, 2017, Plaintiff for the first time discovered from a third party's mother that her financial information had been invaded without the Plaintiff's knowledge or authority, due to the

---

[2]   In this second count, Plaintiff avers that the Defendants, "under current federal regulations and state common law principles, has [sic] a fiduciary relationship with Plaintiff, which include[s] a duty to preserve the right to privacy of [her] financial records[,]" which was breached and thereby caused her damage and injury. (Doc. 1, Exhibit 1, COMPLAINT, at ¶¶ 15-17.)

Defendants' involvement. At this point, the Plaintiff immediately telephoned the Defendant Bank to complain about the invasion of her privacy.

11.    Although at first, upon receiving Plaintiff's complaint, the Defendant Bank said nothing in response, nonetheless later on the Plaintiff received weak acknowledgements of wrongdoing from the Defendant Bank, which officially apologized.

12.    Nonetheless, Plaintiff was mortified, devastated, humiliated, and embarrassed that her financial information had been exposed to public sources, causing her name to be scandalized throughout the Dallas County community, based upon financial information the Defendant Nix, acting on behalf of Defendant Bank, informed a minimum of 8-10 people. Said information spread further, and painted Plaintiff as wrongfully or illicitly receiving money from a third party, to her detriment and damage.

(Doc. 1, Exhibit 1, COMPLAINT, at ¶¶ 5-12.) In addition to delineation of the foregoing facts/background in support of her claims (*id.*), Clay specifically averred that she was asserting "[n]o federal causes of action" in her Complaint. (*Id.* at ¶ 18.)

Wells Fargo Bank ("Wells Fargo") and Uleter Nix ("Nix") removed the action to this Court on August 31, 2017. (Doc. 1). Therein, the Defendants aver that removal is proper pursuant to 28 U.S.C. § 1331[3] (Doc. 1, ¶ 8) based upon the following:

9.    In the Complaint, Clay expressly claims that her injury arises, at least in part, out of Defendants' alleged violations of federal law. Clay asserts that Defendants violated federal privacy regulations by disclosing Clay's financial records [to] a federal agent and various unnamed parties, and failing to notify her. Compl. ¶¶ 8-9, 15. The Complaint provides that "Defendants Bank and Nix, **under current federal regulations** . . . has a fiduciary relationship with Plaintiff, which included a duty to preserve the right to privacy of Plaintiff's financial records."[4] *Id.* at ¶ 15.

---

[3]    "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[4]    The undersigned here replicates a significant portion of the Defendants' footnote 3, as follows:

(Continued)

10.    Furthermore, shortly after the Complaint was filed, Plaintiff's counsel held a press conference where he declared: "[w]e think we have them almost slam dunk on this thing as far as **violating both the federal law** and state law . . . [.]"[] *See* Selma-Times Journal Article, attached as Exhibit 2. The statement reflects Plaintiff's counsel's awareness and acknowledgment that Plaintiff's claims arise under federal law.

11.    Federal law provides the framework for when and under what circumstances banks can and/or must disclose their customers' private information. *See, e.g.,* 31 U.S.C. §§ 5311-5330; . . . 12 U.S.C. §§ 3403(c), 3413(d); 31 U.S.C. § 5318(g)(1) . . . . Further, the Annunzio-Wylie Act provides banks with immunity from civil liability for three different types of disclosures: (1) disclosure pursuant to the Act itself; (2) disclosure pursuant to "any other authority;" and, more generally, (3) **disclosure of any possible violation of law or regulation**. 31 U.S.C. § 5318(g)(3) []. Here, Clay's allegation that Defendants disclosed information to a federal agent would, at the very least, fall under the third category.

[12].    Clay's state-law claims, which are preempted by federal law, arise out of the same set of facts as its (sic) federal claims and thus are "part of the same case or controversy," such that the United States District

---

The Complaint states that it pleads no federal claims, see Compl., at ¶ 19, but it pleads otherwise in paragraph 15. Because the disclaimer is inconsistent with the allegations in the Complaint, it should be given no effect. The artful pleading doctrine applies in cases in which a plaintiff has essentially pled a federal cause of action (i.e., the court will have to look at federal law when ruling on those claims) but files a complaint in state court, asserting only state law claims, to avoid federal jurisdiction. *See Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 366-67 (5th Cir. 1995). . . . In this situation, a federal district court is required to look behind the face of [the] complaint and ascertain the real nature of the plaintiff's complaint. *See Carpenter,* 44 F.3d at 366-67. The artful pleading doctrine may also apply in cases in which the plaintiff has pled only state law claims but the state law causes of action are preempted by federal law. *See[,] e.g.[,] Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58 (1987) (holding that in cases in which ERISA applies, a case may be removed to federal court even though only state law claims appear in the complaint). When this occurs, the case is removable even though only state law claims appear in the complaint. *Id.* Here, the real nature of Clay's claims arise under federal law and regulations. Further, the Court will have to apply federal law to determine if Defendants are liable, even to any state-law-privacy claim. Finally, if the Complaint only pleads state-law claims, then the entire Complaint should be dismissed because those claims are preempted.

(Doc. 1, at 4-5 n.3.)

Court for the Southern District of Alabama has supplemental jurisdiction over those claims. 28 U.S.C. § 1367(a); *see also Ramirez-Mendoza v. Int'l Pallet, Inc.,* . . ., 2013 WL 4013476, at *2 n.1 (N.D. Ala. Aug. 6, 2013) ("When state law claims form part of the same 'case or controversy' or 'arise out of a common nucleus of operative fact[s] with a substantial federal claim,' a district court may exercise supplemental jurisdiction over those state law claims." . . .).

[13].    All of the allegations in the Complaint—including all of the federal and state-laws causes of action—arise out of Defendants' alleged disclosure of private information to third parties and failure to notify Clay. Because the state-law claims form part of the "same case or controversy" as the federal claims, this court has supplemental jurisdiction over the state-law claims.

[14].    Moreover, Clay's state law claims are preempted by federal law. In fact, "the 'safe harbor' provision of the Annunzio-Wylie Act explicitly preempts state law claims filed against financial institutions complying with its requirements."[5] *Stoutt v. Banco Popular de Puerto Rico,* 158 F.Supp.2d 167, 176 (D.P.R. 2001). In matters of preemption, a court cannot entertain state law claims which have been preempted and not authorized to proceed pursuant to a federal statute.[] Accordingly, any claims against Defendants must be brought under federal law or they are preempted.

(Doc. 1, at 4-7.)[6]

Plaintiff filed her motion to remand on September 11, 2017. (Doc. 7.)

1.    The Plaintiff's Complaint on its face does not plead any federal cause of action, but instead pleads state causes of action for invasion of right to privacy and breach of a fiduciary duty. Plaintiff specifically pleads that no federal causes of action are contained in the complaint.

2.    The fact that a Plaintiff in a complaint . . . has alleged both a violation of state common law and federal regulation is not sufficient to give it status as a federal cause of action, nor is it sufficient to give a state-

---

[5]    "Clay's state law claims conflict with federal law. The Court will have to apply federal law to determine if Defendants are liable, even [as] to any state-law-privacy claim." (Doc. 1, at 7 n.4.)

[6]    Although the Defendants' notice of removal contains a conclusory reference to 28 U.S.C. § 1332 (Doc. 1, at 1), the Defendants nowhere demonstrate that this Court may exercise diversity jurisdiction (*see id.* at 2-8) and, therefore, this Court should conclude that this reference was a scrivener's error.

based claim status as a jurisdiction-triggering federal question. Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 813-817, 106 S.Ct. 3229, 3234-3237 (1986).

3.     A breach of the Bank Secrecy Act, 31 U.S.C. § 5318[,] does not create a private federal cause of action. In re Agape Litigation, 681 F.Supp.2d 352, 360 (E.D. N.Y. 2010).

4.     "As a general rule, a case arises under federal law only if it is federal law that creates the cause of action." Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996).

.     .     .

7.     This Plaintiff's Complaint does not state a civil action which arises under the constitution, laws or treaties of the United States, and therefore this court does not have jurisdiction pursuant to 28 U.S.C. § 1331.

8.     Plaintiff's civil action pursuant to its claims of invasion of right of privacy and breach of fiduciary duty involves disclosures of information to other third parties including a minimum of 8-10 people. (See paragraphs 9, 11 and 12 of Plaintiff's Complaint.)

(Doc. 7, at ¶¶ 1-4 & 7-8.)

The principle thrust of the Defendants' response in opposition to Plaintiff's motion to remand is clearer than the notice of removal (*compare* Doc. 9 *with* Doc. 1) and consists of the contention that "'plaintiff's right to relief **necessarily depends** on resolution of a substantial question of federal law, federal question jurisdiction may nevertheless attach to the state-law claim.'" (Doc. 9, at 1, quoting *Hill v. BellSouth Telecommunications, Inc.,* 364 F.3d 1308, [1314] (11th Cir 2004)). Defendants contend that Plaintiff's Complaint places at issue their putative disclosures of private information to a federal agent, disclosures they argue are mandated by federal regulations, thereby "raising a substantial question of federal law and invoking the federal question jurisdiction of this Court." (Doc. 9, at 1-2; *see also id.* at 3 & 4 ("Since disclosures to

federal authorities are regulated by federal law, Plaintiff's claim that Defendants disclosed private information to a federal agent ***necessarily depends*** on resolution of a substantial question of federal law, and, in turn, this Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331. . . . Indeed, federal law cannot be detached from Plaintiff's claims because Defendants' liability turns on whether Defendants were complying with federal law in allegedly disclosing Plaintiff's private information to a federal agent." (emphasis in original))). Accordingly, the Defendants urge this Court to deny the remand motion, based on the following: "(1) Plaintiff's right to relief depends on the resolution of a substantial question of federal law, which creates federal question jurisdiction; (2) Plaintiff pleaded a claim arising under federal law; and (3) this Court has supplemental jurisdiction over any state law claims." (*Id.* at 4.)

With respect to the focal issue, whether a substantial question of federal law creates federal jurisdiction, the Defendants point out that resolution of this issue is informed/controlled by the standard set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 314, 125 S.Ct. 2363, 2368, 162 L.Ed.2d 257 (2005) (recognizing that federal issues imbedded in state-law claims between nondiverse parties have not been kept out of federal court simply "because they appeared in state raiment" but also noting that "'federal issue' [i]s [not] a password opening federal courts to any state action embracing a point of federal law[;] [i]nstead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."), and argue: (1)  the alleged disclosures they made to a federal agent implicate a substantial

question of federal law inasmuch as the Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5318(g) ("Annunzio-Wylie Act")[7] insulates them from liability for those disclosures since the disclosures arose in the context of the federal agent's investigation of Clay for financial crimes (*compare* Doc. 9, at 5-8 *with* Doc. 1, Exhibit 2 (newspaper article); *see also* Doc. 9, at 8 ("Any disclosures Wells Fargo made would be disclosures to the federal government in an effort to comply with federal law. In light of this federal law, Plaintiff's claims specifically place at issue whether Defendants complied with federal law by making disclosures to the federal government and its agents during the course of a federal investigation and related legal process.")); (2) as with the Plaintiff's state-law claim in *Grable, supra,* Clay's state-law claims depend upon

---

[7]      Plaintiff contends that in making this argument the Defendants are claiming that the Annunzio-Wylie Act "preempts all state law." (Doc. 13, at 5.) While the undersigned does not agree that the Defendants are making this argument, inasmuch as their response simply does not specifically intone the doctrine of "complete" preemption (*see* Doc. 9), for purposes of this record the undersigned sets forth the remainder of Plaintiff's thoughts on the Annunzio-Wylie Act.

In fact, the "Annunzio Act" only grants immunity where the bank or its employee, officer, agent or director (1) makes a voluntary disclosure of any possible violation of law or regulation to a government agency, or (2) makes a disclosure pursuant to 31 U.S.C. § 5318, or (3) fails to provide notice of such disclosure to the person who is the subject of such disclosure or any other person described in the disclosure. 31 U.S.C. § 5318(g)(3)(A). However, the "Annunzio Act" does not grant liability immunity with respect to disclosures that do not fall within the categories of disclosures for which § 5318(g)(3) grants immunity. See Lopez v. First Union National Bank, 127 F.3d 1186, 1191 (11th Cir. 1997). Therefore, there is not complete preemption of Alabama's police power. In fact, 31 U.S.C. § 5318(g)(3)(B) provides in part that subparagraph (A) shall not be construed as creating any immunity against, or otherwise affecting, any civil or criminal action brought by any government to enforce any constitution, law or regulation of such government agency. [*Id.*] Since Alabama law is not completely preempted in this area and given that a federal cause of action has not been created, the welcome mat for federal jurisdiction is not present. Grabel & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. at [] 318, 125 S.Ct. at 2370. The applicability of this ruling to Plaintiff Clay's case is obvious.

(Doc. 13, at 5-6.)

an important interpretation of federal privacy and disclosure law, that is, "whether it is improper for a bank to disclose information to the federal government and its agents pursuant to a federal investigation or when a bank suspects suspicious activity[,]" thus requiring resolution by the federal forum since the answer to this question will "have profound impact on the procedures followed by numerous financial institutions when seeking to comply with the federal mandate that they communicate certain financial information concerning their customers to the federal government[]" (*id.* at 9-10); and (3) the artful pleading doctrine supports this Court's exercise of subject-matter jurisdiction because "Clay's causes of action are predicated on Defendants['] alleged improper disclosures to the federal government, an allegation that involves a substantial question of federal law." (*Id.* at 12-13; *see also id.* at 10-12.)

The Defendants also contend that Plaintiff's complaint pleads a cause of action arising under federal law, namely, an action arising under the Right to Financial Privacy Act ("RFPA") because that Act prohibits that which Clay alleges, that is, it prohibits banks from disclosing the financial records of its customers to third parties without authorization. (*Id.* at 13-14.)[8] The Defendants point out that the RFPA "permits private causes of action to be brought in federal court without regard to the amount in controversy[,]"[9] and that "*[s]ome* federal courts have referred to the RFPA as being

---

[8]    The Defendants make clear in this section that they never intended to suggest that Clay's Complaint pleads a cause of action under the Bank Secrecy Act, 31 U.S.C. § 5318, and at least implicitly concede that Plaintiff is correct that this Act does not create a private federal cause of action. (*Id.* at 13 ("The BSA is merely one of Defendants' affirmative defenses.")).

[9]    *See* 12 U.S.C. § 3416 ("An action to enforce any provision of this chapter may be brought in any appropriate United States district court without regard to the amount in (Continued)

within the exclusive jurisdiction of the federal courts." (*Id.* at 15 (emphasis added), citing

*Raikos v. Bloomfield State Bank,* 703 F.Supp. 1365 (S.D. Ind. 1989); *McDonough v.*

*Widnall*, 891 F.Supp. 1439 (D. Colo. 1995)).

> Plaintiff contends that Defendants breached their fiduciary duties as
> required by federal regulations (FRPA) when they disclosed private
> information to a federal agent. That cause has to arise under the FRPA
> because the FRPA governs whether those disclosures were improper.
> Any liability connected with those alleged improper disclosures arise under
> the RFPA. And, Defendants' defenses for those disclosures also arise
> under the RFPA (as well as other federal statutes such as the BSA and
> Annunzio Act).

(*Id.* at 15-16 (footnote omitted)). Thus, Defendants argue that this Court may exercise

subject-matter jurisdiction because the Complaint pleads a cause of action that arises

under federal law. (*Id.* at 16)[10].

Finally, the Defendants contend that this Court should exercise supplemental

jurisdiction over Plaintiff's state-law claims—regarding disclosure to unidentified third-

parties—because those claims arise out of the same set of facts as the federal claims

and are, therefore, part of the same case or controversy. (*Id.* at 16-17).

> All of the allegations in the Complaint—including all of the federal
> and state-law causes of action—arise out of Defendants' alleged
> disclosure of Plaintiff's private information to third parties and failure to
> notify Plaintiff. Because the state-law claims form part of the "same case
> or controversy" as the federal claims, this court has supplemental
> jurisdiction over the state-law claims.

---

controversy within three years from the date on which the violation occurs or the date of
discovery of such violation, whichever is later.")

[10]     Plaintiff reiterates that breach of the BSA does not create a private cause of
action (Doc. 13, at 2), which the Defendants do not dispute (*see* Doc. 9, at 13), and also points
out that neither the BSA nor the RFPA "create a federal claim for monetary damages." (*Id.,*
citing *Smart v. First Union National Bank,* 245 F.Supp.2d 1229, 1233 (M.D. Fla. 2003); *see also
id.* at 3.)

(*Id.* at 17).

Although the undersigned has already set forth some of Clay's arguments in her reply parenthetically in footnotes, the undersigned otherwise notes a few additional comments by Plaintiff:

> The fact that a Plaintiff states in h[er] complaint that a federal law has been violated does not simply in itself create a federal cause of action. Even where federal law does not provide a remedy, a violation of federal law may be evidence of a standard which was violated. Knight v. Burns, Kirkley & Williams Const. Co., Inc., 331 So.2d 651, 654 (Ala. 1976).

> Included in the Plaintiff's allegation[s] is the fact the Defendant[s] disclosed to third parties, and at a minimum of 8 to 10 people, matters concerning the Plaintiff's financial information. (Plaintiff's complaint, ¶[¶] 8, 9, and 12).

> Significantly, Plaintiff not only alleges a violation of Alabama common law principles, but specifically files only state law claims for (a) invasion of right to privacy and (b) for a breach of a fiduciary duty.

> In [their] response, although the Defendants attempt to argue that disclosure to federal agents is preempted by federal law, the Defendant[s] never argue[] that the claims based on the Defendant[]s['] disclosures to third persons raise federal question jurisdiction, or turns on a construction of federal law.

> .   .   .   .

> On the face of the complaint in this case[,] Plaintiff alleges that her financial information was disclosed to third persons[,] including a minimum of 8-10 people. Plaintiff Clay does not allege that the information was disclosed pursuant to any belief there was a possible violation of federal law. Her complaint does not allege that her financial information was disclosed pursuant to any warrant, summons, or subpoena.

(Doc. 13, at 1-2 & 6.)

## CONCLUSIONS OF LAW

### A.    Jurisdiction in General.

The removing defendants "must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction." *Whitney Nat'l Bank v. Lakewood Investors,* 2011 WL 3267160, *2 (S.D. Ala. Jul. 28, 2011), citing *Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290, 1294 (11th Cir. 2008) and *Friedman v. New York Life Ins. Co.,* 410 F.3d 1350, 1353 (11th Cir. 2005). It is, of course, axiomatic that "Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (internal citations omitted)). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted). Indeed, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court." *Brown v. Endo Pharmaceuticals, Inc.,* 38 F.Supp.3d 1312, 1318 (S.D. Ala. 2014) (citation omitted); *University of South*

*Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *Federal Deposit Ins. Corp. ex rel. Colonial Bank v. Banc of America Funding Corp.,* 2013 WL 3968017, *1 (M.D. Ala. Aug. 1, 2013) ("[I]n actions removed from state court to federal court, federal courts strictly construe removal statutes, resolve all doubts in favor of remand, and place the burden of establishing federal jurisdiction on the defendant.").

**B.    Federal Question Jurisdiction**. As noted above, the Defendants contend that federal jurisdiction lies in this case pursuant to the federal question provisions of 28 U.S.C. § 1331, which provides that federal courts possess "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States[,]" 28 U.S.C. § 1331. In *Gunn v. Minton*, 568 U.S. 251, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013), the Supreme Court reiterated that "[f]or statutory purposes, a case can 'aris[e] under' federal law in two ways." *Id.* at 257, 133 S.Ct. at 1064.

> Most directly, a case arises under federal law when federal law creates the cause of action asserted. As a rule of inclusion, this "creation" test admits of only extremely rare exceptions, and accounts for the vast bulk of suits that arise under federal law[.] . . .
>
> But even where a claim finds its origins in state rather than federal law . . . we have identified a "special and small category" of cases in which arising under jurisdiction still lies. . . .
>
> In an effort to bring some order to this unruly doctrine several Terms ago, we condensed our prior cases into the following inquiry: Does the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"? That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3)

substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Id.* at 257 & 258, 133 S.Ct. at 1064 & 1064-65 (internal citations omitted).

It appears from the Defendants' response in opposition to Plaintiff's motion to remand that Wells Fargo and Nix are relying on both of *Gunn v. Minton*'s paths to § 1331 jurisdiction (*see* Doc. 9, at 4-16 (arguing that jurisdiction over Clay's claims exist because her right to relief necessarily depends on the resolution of a substantial question of federal law and also contending that the complaint pleads a cause of action arising under federal law)), and, therefore, the undersigned focuses on the "federally-created" cause of action path before considering whether to base federal jurisdiction on a state claim that raises a federal issue because the Defendants have established *Gunn v. Minton*'s four requirements.

1.    ***Gunn v. Minton*'s "federally-created" Cause of Action Path.** In their brief in opposition to Clay's motion to remand, the Defendants, separate and apart from their *Grable* argument and analysis (*see* Doc. 9, at 4-9; *see also id.* at 1-3 (argument, made in accordance with *Grable*, that this Court has jurisdiction over Clay's claims because her right to relief necessarily depends on the resolution of a substantial question of federal law)), which *Gunn v. Minton* safely ensconces as the second path for establishing "arising under" jurisdiction, specifically contend that that Clay's complaint pleads a federal cause of action arising under the Right to Financial Privacy Act

("RFPA") (Doc. 9, at 13-16).[11] The Defendants argue this is so because Clay claims that Wells Fargo and Nix "breached their fiduciary duties as required by federal regulations [] when they disclosed private information to a federal agent[12][]" (*id.* at 15-16 (footnote added)) and that this cause of action necessarily "has to arise under the RFPA because the RFPA governs whether those disclosures were improper[]" and "[a]ny liability connected with those alleged improper disclosures arise under the RFPA." (*Id.* at 16).

In light of *Gunn v. Minton*'s clear indication that there are two paths of "arising under" jurisdiction,[13] the undersigned necessarily understands the Defendants'

---

[11]    In this section of their brief, the Defendants broadly contend that "both Plaintiff's claims and [their] defenses, in fact, arise under federal law." (Doc. 9, at 13; *see also id.* at 13-14). To the extent the Defendants' response in opposition to the motion to remand (and/or the notice of removal) is meant to suggest that this Court may properly exercise federal question jurisdiction in this case because the Defendants' defenses may arise under federal law, the Defendants are mistaken inasmuch as it is clear that  "a defense which presents a federal question can not create removal jurisdiction." *Kemp v. International Business Machines Corp.,* 109 F.3d 708, 712 (11th Cir. 1997); *see also Vaden v. Discover Bank,* 556 U.S. 49, 60, 129 S.Ct. 1262, 1272, 173 L.Ed.2d 206 (2009) ("Federal jurisdiction cannot be predicated on an actual or anticipated defense.").

[12]    Clay's complaint nowhere specifically contends that the Defendants breached their fiduciary duties required by federal regulations in disclosing private information to a "federal agent"; instead, the Defendants have read "federal agent" into the Count Two allegations based upon the incorporation language contained therein. (*See* Doc. 1, Exhibit 1, COMPLAINT, at ¶ 15.).

[13]    There is arguably a third path for "arising under" jurisdiction, namely, "when a federal statute wholly displaces the state-law cause of action through complete preemption[,]" the state cause of action can be removed. *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 2063, 156 L.Ed.2d 1 (2003); *see also Vaden, supra,* 556 U.S. at 60, 129 S.Ct. at 1273 ("A *complaint* purporting to rest on state law, we have recognized, can be recharacterized as one 'arising under' federal law if the law governing the complaint is exclusively federal. . . . Under this so-called 'complete preemption doctrine,' a plaintiff's 'state cause of action [may be recast] as a federal claims for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.'"); *Gables Ins. Recovery, Inc. v. Blue Cross and Blue Shield of Florida, Inc.,* 813 F.3d 1333, 1337 (11th Cir. 2015) ("'[C]omplete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim.'" (citations omitted)), *cert. denied,* ___ U.S. ___, 137 S.Ct. 296, 196 L.Ed.2d 215 (2016); *compare id. with Reed v. U. S. Bank Nat'l Ass'n,* 2017 WL 2001998, *1 (M.D. Fla. May 11, (Continued)

———————————————

2017) (recognizing that the Supreme Court had "clarified" that a cause of action can arise under federal law in one of three ways, the third way being "where 'a federal cause of action completely preempts a state cause of action.'"). The Defendants nowhere "intone" the doctrine of complete preemption in either their notice of removal (*see* Doc. 1, at 6-7) of their brief in opposition to the motion to remand (*see* Doc. 9), and, therefore, this avenue for "arising under" jurisdiction simply does not exist.

However, some further comments are needed here regarding preemption because of the contents of the Defendants' notice of removal (Doc. 1, at 6-7) and the portion of the Defendants' brief in opposition relative to their argument that the Plaintiff's complaint pleads a cause of action arising under the RFPA (Doc. 9, at 13-16). With respect to the notice of removal, the Defendants make conclusory and somewhat confusing "arguments" that Plaintiff's state-law claims are preempted by federal law (*see* Doc. 1, at 6 & 7, ¶¶ [12] & [14]); however, the argument in ¶ [12] is not a preemption argument at all but is a conclusory statement made in support of the argument that this Court should exercise supplemental jurisdiction over Plaintiff's state-law claims (*see id.*). In addition, while Defendants, again in a conclusory manner, state in ¶ [14] that Clay's state-law claims are preempted by the "safe harbor" provision of the Annunzio-Wylie Act, this argument is not informed by the complete preemption doctrine because the Defendants are not arguing that Plaintiff's state-law claims are "transformed" into claims "arising under" federal law but, instead, that the "safe harbor" provision of the Annunzio-Wylie Act actually precludes Plaintiff's state-law claims (*see id.*). As previously recognized, "[f]ederal jurisdiction cannot be predicated on an actual or anticipated defense." *Vaden, supra,* 556 U.S. at 60, 129 S.Ct. at 1272; *compare id. with Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption [as opposed to the doctrine of complete preemption], even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."). In other words, "a federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption." *Geddes v. American Airlines, Inc.,* 321 F.3d 1349, 1353 (11th Cir.), *cert. denied,* 540 U.S. 946, 124 S.Ct. 386, 157 L.Ed.2d 276 (2003).

And, turning to the Defendants' brief in opposition to the motion to remand, following citation to 12 U.S.C. § 3416, the Defendants proceed to argue that "***[s]ome*** federal courts have referred to the RFPA as being within the exclusive jurisdiction of the federal courts." (Doc. 9, at 15 (emphasis supplied; citations omitted)). However, the Defendants cite to no federal court in the Eleventh Circuit that has reached such conclusion (*see id.*)—and indeed only cite two district court opinions that they contend stand for this general proposition without quoting any explicit language in support of their contention—and the undersigned simply cannot find that the statute itself states that such jurisdiction shall be exclusive. Instead, the statute simply provides that suits of the kind described "may" be brought in the federal district courts, not that they must be brought only in federal district courts. Accordingly, this Court should decline the Defendants' invitation to explicitly determine that the RFPA is within the exclusive jurisdiction of the federal courts. In addition, to the extent the Defendants meant, in making this argument, to suggest that § 3416 of the RFPA completely preempts Plaintiff's state-law claims, such suggestion need fail both because the Defendants, as aforesaid, do not anywhere specifically "intone" complete preemption and because the Defendants have not established that any arguable preemptive force of § 3416 is so powerful as to displace entirely any state cause of action, *cf. Foxworth v.* (Continued)

16

contention that Count Two of the Complaint pleads an action arising under federal law (specifically, the RFPA),[14] as constituting the argument that the RFPA creates Clay's breach of fiduciary duty count. Before addressing whether the RFPA creates the cause of action asserted by Clay in Count Two of her complaint, the undersigned begins by generally recognizing that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc., supra,* 482 U.S. at 392, 107 S.Ct. at 2429; *see also Cedar Creek Land & Timber, Inc. v. Guy,* 2015 WL 728107, *2 (S.D. Ala. Feb. 18, 2015) ("'The test ordinarily applied for determining whether a claim arises under federal law is

---

*Trustmark Nat'l Bank,* 934 F.Supp. 218, 222 (S.D. Miss. 1996) ("[T]he defendant says that complete preemption depends on whether the federal statutory scheme in question has a civil enforcement provision; a clear grant of federal jurisdiction; and congressional intent for the federal scheme to have preemptive effect. Then, the defendant attempts to show that all of these factors are present in the RFPA. Although defendant can show a civil enforcement provision and a clear grant of federal jurisdiction, defendant has submitted no evidence that Congress intended this statute to have preemptive effect. Defendant cites no case authority nor any specific expression of Congressional intent for RFPA to be preemptive. Furthermore, . . . the RFPA made no provision for protecting financial institutions from non-RFPA claims when the financial institutions disclosed financial records. Thus, it would appear that state law claims are not and were never preempted by the RFPA for disclosures mandated by federal law."), and, more specifically, a state-law claim for breach of a fiduciary duty caused by the disclosure of private financial information to third parties/public sources (that is, individuals who are not government agents). The undersigned simply reiterates that § 3416 could not preempt such a state-law claim because the RFPA, as set forth *infra*, does not regulate disclosure to entities and individuals other than the government. So, the undersigned would arrive "back" to the well-recognized principle that "a federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption." *Geddes, supra,* 321 F.3d at 1353.

[14]    Because the removing Defendants bear the burden of demonstrating federal jurisdiction, here federal question jurisdiction, and in no manner clearly and succinctly argue that federal law creates the cause of action asserted in Count One of the complaint—that is, invasion of the right to privacy (*see* Doc. 9, at 13-16)—the undersigned considers in this section of the opinion only whether the Defendants have established that the RFPA creates the cause of action asserted in Count Two of the Complaint.

whether a federal question appears on the face of the plaintiff's well-pleaded complaint.'" (citations omitted)). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law[,]" *Caterpillar, Inc.,* 482 U.S. at 392, 107 S.Ct. at 2429, "even where a federal claim is also available." *Dunlap v. G&L Holding Group, Inc.,* 381 F.3d 1285, 1290 (11th Cir. 2004).

With the contours of this doctrine in mind, and recognizing that Plaintiff's Complaint (at the end of Count Two) denies assertion of any federal cause of action (Doc. 1, Exhibit 1, COMPLAINT, at ¶ 18) and that there is no obvious federal claim on the face of the complaint, it appears to be an easy call that the RFPA does not create Plaintiff's breach of fiduciary duty claim. *See Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983) (recognizing that where, as here, state law creates Clay's causes of action, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, *or* that one or the other claim is 'really' one of federal law." (emphasis supplied)). Nevertheless, a bit more analysis is necessary.

The undersigned certainly recognizes that § 3416 of the RFPA provides that "[a]n action to enforce any provision of this chapter may be brought in any appropriate United States district court without regard to the amount in controversy within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later." 12 U.S.C. § 3416 (emphasis added). Moreover, there can be little question but that, following the Supreme Court's holding in *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) "the Fourth Amendment does not

prohibit the obtaining of information revealed to a third party [*i.e.,* a bank] and conveyed by him to Government authorities[,]" *id.* at 443, 96 S.Ct. at 624, Congress enacted the RFPA, which, "[a]mong other things, . . . defines the conditions in which financial institutions may disclose an individual's financial records [to any Government authority], *see* 12 U.S.C. § 3403, defines the conditions in which government officials may access an individual's financial records, *see* 12 U.S.C. § 3402, and provides a civil cause of action for anyone injured by violation of the act's substantive provisions, *see* 12 U.S.C. § 3417." *Lopez v. First Union Nat'l Bank of Florida,* 129 F.3d 1186, 1190 (11th Cir. 1997). Importantly, however, as made clear in *Downs v. Regions Bank,* 2010 WL 381116 (M.D. Ala. Jan. 25, 2010), the RFPA "does not regulate disclosure to entities other than the government." *Id.* at *5.

And with the understanding that the RFPA does not regulate disclosure to entities or individuals other than the government, the Defendants' contention that Count Two of the Complaint pleads an action arising under federal law (specifically, the RFPA) need fail and not solely because the Plaintiff specifically states in the last paragraph of this count that she asserts "[n]o federal causes of action" (Doc. 1, Exhibit 1, COMPLAINT, at ¶ 18) but primarily because the very essence of Count Two of the Complaint is directed to the Defendants' disclosure of Clay's private financial information to third parties/public sources (that is, persons other than the unidentified federal agent),[15] which disclosures breached a fiduciary duty owed by the Defendants

---

[15] Count Two contains no direct mention of either the federal agent or the third parties/public sources to whom Clay's bank records were disclosed/displayed (*see id.* at ¶¶ 15-18) but does incorporate all previous allegations of the complaint (*id.* at ¶ 15), and those previous allegations mention the alleged disclosures both to the federal agent and to a minimum of 8 to 10 third parties/public sources in the Dallas County community. The undersigned finds (Continued)

(and informed by federal regulations and state common law principles) to Plaintiff to preserve the privacy of her financial information (*compare id.* at ¶¶ 15-16 *with id.* at ¶¶ 8-12) and caused her damage (*compare id.* at ¶ 17 ("Plaintiff avers she has been damaged and injured as more fully described in paragraph 12 above.") *with id.* at ¶ 12 ("Plaintiff was mortified, devastated, humiliated, and embarrassed that her financial information had been exposed to public sources, causing her name to be scandalized throughout the Dallas County community, based upon financial information the Defendant Nix, acting on behalf of Defendant Bank, informed a minimum of 8-10 people. Said information spread further, and painted Plaintiff as wrongfully or illicitly receiving money from a third party, to her detriment and damage."). Stated differently, the Defendants nowhere establish what substantive provision of the RFPA Clay could possibly be seeking to enforce in asserting that the Defendants' breached a fiduciary duty when they disclosed/exposed/broadcast her private financial information to third parties/public sources and, indeed, cannot, because, as aforesaid, the RFPA does not regulate disclosure to entities and individuals other than the Government. *Downs, supra.* Moreover, the description of Plaintiff's damages safely ensconces Count Two as a state-law claim for breach of fiduciary, *compare Regions Bank v. Lowrey,* 101 So.3d 210, 219 (Ala. 2012) (finding the elements of a breach of fiduciary duty to be "(1) the existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach.") *with Flying J Fish Farm v. Peoples Bank*

---

that a fair reading of the complaint establishes that Count Two is directed toward the Defendants (as is Count One) based upon disclosures of her private banking information to those Dallas County community third parties/public sources (*compare id.* at ¶¶ 15-18 *with id.* at ¶¶ 8-14).

*of Greensboro,* 12 So.3d 1185, 1190-91 (Ala. 2008) ("Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank. . . . However, a fiduciary duty may arise when the customer reposes trust in the bank and relies on the bank for financial advice, or in other ***special circumstances***." (quotation marks omitted; emphasis supplied)) and *Power Equipment Co., Inc. v. First Alabama Bank,* 585 So.2d 1291, 1298 (Ala. 1991) ("Although this Court has previously held that 'other special circumstances' may create a fiduciary relationship, those circumstances have never been defined."),[16] and not an action created by the RFPA, because it directly "ties" Clay's damages to the exposure of her private financial information to "public sources," a group in which a government agent would not be a party. *Cf. id.*[17]

In light of the foregoing, the undersigned finds that Count Two of Plaintiff's complaint does not arise under the RFPA because that claim emanates from disclosures of Clay's private banking information to third parties/public sources who were not the agent; that is, the RFPA simply does not create Clay's breach of fiduciary duty claim set forth in Count Two of the Complaint. And since the Defendants have not carried their burden of establishing that federal law creates the cause of action Plaintiff

---

[16] Importantly, in *Patrick v. Union State Bank,* 681 So.2d 1364 (Ala. 1996), the Alabama Supreme Court observed that "'[b]anks stand in the intimate relation of a fiduciary to those who are their customers [and] depositors[.]'" *Id.* at 1369, quoting *Security Trust & Savings Bank v. Marion County Banking Co.,* 287 Ala. 507, 513, 253 So.2d 17, 21 (1971).

[17] Clay's name could not have been "scandalized throughout the Dallas County community" (Doc. 1, Exhibit 1, COMPLAINT, at ¶ 12) by disclosure of the information solely to the federal agent; instead, the only manner in which Plaintiff could have been damaged as stated in paragraph 12 was through disclosure of the information to third parties/public sources not including the government agent.

asserts in Count Two of her complaint, the undersigned considers whether the Defendants have identified a space for this particular case in the "'special and small [or slim] category' of cases in which arising under jurisdiction still lies." *Gunn v. Minton, supra,* 568 U.S. at 258, 133 S.Ct. at 1064 (citation omitted).

       2.   ***Gunn v. Minton's* "Special and Small Category" of Cases Path.**

Although an admittedly small category of cases is included in this second path to "arising under" jurisdiction,[18] it is with respect to this path that the Defendants have expended the most energy. (*See* Doc. 9, at 1-13.) As noted in *Gunn v. Minton*, the Supreme Court condensed all of their prior relevant cases in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) into the following inquiry:

> Does the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"? *Grable,* 545 U.S., at 314, 125 S.Ct. 2363. That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts. *Id.* at 313-314, 125 S.Ct. 2363.

568 U.S. at 258, 133 S.Ct. at 1065.

---

[18]    Indeed, "'[t]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction[,]' even where the interpretation of federal law may constitute an element of the state cause of action." *Madzimoyo v. The Bank of New York Mellon Trust Co., N.A.,* 440 Fed.Appx. 728, 730 (11th Cir. Sept. 7, 2011), quoting *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986).

Application of the foregoing inquiry requires this Court to look to Clay's asserted state-law claims of invasion of privacy and breach of fiduciary duty. *See id.* at 259, 133 S.Ct. at 1065 (looking to elements of legal malpractice under Texas law and finding that in order for Plaintiff to prevail on this claim he would have to show—for causation purposes—that "he would have prevailed in his federal patent infringement case if only petitioners had timely made an experimental-use argument on his behalf[,]" which showing "will ***necessarily*** require application of patent law to the facts of Minton's case." (emphasis supplied)); *see also Grable, supra,* 545 U.S. at 314-15, 125 S.Ct. at 2368 ("Grable's state complaint must specify 'the facts establishing the superiority of [its] claim,' Mich. Ct. Rule 3.411(B)(2)(c) (West 2005), and Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law. Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case."). Here, as aforesaid, under Alabama law, a Plaintiff alleging breach of fiduciary duty must establish the following three elements: "(1) the existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach." *Regions Bank v. Lowrey, supra,* 101 So.3d at 219. And, with respect to the tort of invasion of privacy, a tort Alabama has long recognized, *see, e.g., Phillips v. Smalley Maintenance Servs., Inc.,* 435 So.2d 705, 708 (Ala. 1983) ("Since 1948, beginning with the case of *Smith v. Doss,* 251 Ala. 250, 37 So.2d 118 (1948), Alabama has recognized the tort of 'invasion of the right to privacy.'"), "[i]t is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1)

intruding into the plaintiff's physical solitude or seclusion;[19] (2) giving publicity to private

information about the plaintiff that violates ordinary decency;[20] (3) putting the plaintiff in

a false, but not necessarily defamatory, position in the public eye;[21] or (4) appropriating

---

[19]    The first branch of the invasion-of-privacy tort, that is, wrongful intrusion, has been described in the following manner: "'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Johnston, infra,* 706 So.2d at 702, quoting Restatement (Second) of Torts § 652B (1977).

[20]    The second branch of this tort, giving publicity to private information, was described in *Johnston* in the following manner:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.
>
> .       .       .
>
> Publicity . . . means that the matter is made public, by communicating it to the public at large, or to so many people that the matter must be regarded as substantially certain to become one of public knowledge. The difference [between publicity and publication] is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches or is sure to reach, the public.
>
> Thus, it is not an invasion of the right to privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

*Id.* at 703 (internal quotation marks and emphasis omitted; citations omitted); *see id.* (finding no invasion of privacy by publicity where the defendant Commissioner of the Department of Conservation and Natural Resources merely turned over the investigative file to the person who prompted the investigation, who then shared the file with the plaintiff).

[21]    The third branch of this tort, the "false light" branch, has been described in the following manner:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if:

(Continued)

some element of the plaintiff's personality for a commercial use." *Johnston v. Fuller,* 706 So.2d 700, 701 (Ala. 1997) (citations omitted; footnotes added).

Unfortunately, the Defendants' notice of removal (Doc. 1) and response in opposition to the motion to remand (Doc. 9) are bereft of any delineation of the elements of Plaintiff's state-law causes of action (*see id.*) and, as a result, it is simply impossible for this Court to find that the Defendants have established that Clay's action necessarily raises a federal issue, much less that a federal issue is "actually disputed," "substantial," and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Stated somewhat differently, the Defendants do not identify the elements of Plaintiff's state-law causes of action, as has the undersigned, and certainly performs no analysis like that in *Grable* and *Gunn v. Minton, see Gunn v. Minton, supra,* 568 U.S. at 259, 133 S.Ct. at 1065; *Grable, supra,* 545 U.S. at 314-15, 125 S.Ct. at 2368, in an effort to establish that Clay's state-law claims of invasion of privacy and breach of fiduciary duty necessarily raise a federal issue that is actually disputed and substantial (Doc. 9, at 4-10); instead, the Defendants argue, in a wholly conclusory fashion that Plaintiff's claims "place at issue a substantial question of federal law—whether the alleged disclosures to a federal agent complied with federal

---

a) the false light in which the other was placed would be highly offensive to a reasonable person, and

b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Regions Bank v. Plott,* 897 So.2d 239, 244 (Ala. 2004) (internal quotation marks omitted; citation omitted).

law." (Doc. 9, at 3; *see also id.* ("Since disclosures to federal authorities are regulated by federal law, Plaintiff's claim that Defendants disclosed private information to a federal agent ***necessarily depends*** on resolution of a substantial question of federal law, and, in turn, this Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331." (footnote omitted))). The Defendants then proceed to go about trying to establish that Clay's claims necessarily depend on the resolution of a substantial question of federal law by stating, again in a conclusory manner, that Plaintiff's claims "place at issue Defendants' disclosures of information to a federal agent," (*id.* at 5) which they say implicates a substantial question of federal law, namely the Annunzio-Wylie Act's requirement that Wells Fargo makes disclosures to a federal agent during the course of a federal investigation (*see id.* at 6-8; *id.* at 8 ("In light of the federal law, Plaintiff's claims specifically place at issue whether Defendants complied with federal law by making disclosures to the federal government and its agents during the course of a federal investigation and related legal process.")). Defendants also argue that the answer to whether "it is improper for a bank to disclose information to the federal government and its agents pursuant to a federal investigation or when a bank suspects suspicious activity[]" will "have a profound impact on the procedures followed by numerous financial institutions when seeking to comply with the federal mandate that they communicate certain financial information concerning their customers to the federal government[,]" such that the federal question warrants resolution in a federal forum. (Doc. 9, at 9-10.)

Defendants' brief with respect to this slim category of cases is fatally flawed because, as previously foreshadowed, by narrowing their focus to the disclosures made

to the federal agent[22] and eschewing any focused analysis of Clay's state-law claims (of invasion of privacy and breach of fiduciary duty), the Defendants have left this Court bereft of any ability to perform the critical analysis, which requires answering whether to prevail on her claims (that is, to establish all elements of her claims) this Court will necessarily have to apply federal law to Clay's case; that is, this Court will necessarily have to consider whether the disclosures to the federal agent complied with federal law. In other words, the Defendants have not demonstrated what element (or elements) of Clay's invasion of right to privacy claim or breach of fiduciary duty claim will necessarily require this Court to consider whether the disclosures to the federal agent complied with

---

[22]     Plaintiff's case/claims centers on Defendants' purported disclosures of her private financial information to a minimum of 8 to 10 third parties/public sources in the Dallas County community that caused her damage, but the Defendants focus only on disclosures to the federal agent. (Doc. 1, Exhibit 1, COMPLAINT.) Such disclosures to third parties in the Dallas County community, of course, have nothing to do with federal law, but have everything to do with Alabama law and this is why Clay filed her action in the Circuit Court of Dallas County, Alabama. For instance, and as noted *infra,* Plaintiff's invasion of the right to privacy claim is directed solely to the Defendants' disclosures to those 8 to 10 third parties/public sources in the Dallas County community (none of whom are the federal agent) and have nothing to do with any disclosures the Defendants made to the federal agent. And to the extent the Defendants would question the undersigned's statement in this regard by pointing to Plaintiff's specific averment in Clay's complaint that federal regulations (as well as state common law principles) "create[d]" a fiduciary relationship between the Defendants and her, the undersigned would simply point out that whether federal regulations may or may not inform the question of whether a fiduciary duty/relationship exists between the parties, the existence of that relationship is decidedly not informed and has nothing to do with any disclosures the Defendants made in this case and, in particular, the disclosures made to the federal agent upon which the Defendants' *Gunn v. Minton/Grable* argument hinges. In other words, the disclosures to the federal agent did not "create" any fiduciary relationship/duty that may exist between the Defendants and Clay and, therefore, even if the certain unidentified federal regulations (along with state common law) inform whether a fiduciary duty/relationship exists between the parties, the law in the Eleventh Circuit is clear that "'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction, 'even where the interpretation of federal law may constitute an element of the cause of action.'" *Madzimoyo, supra,* 440 Fed.Appx. at 730, quoting *Merrell Dow, supra,* 478 U.S. at 813, 106 S.Ct. at 3234.

federal law.[23] *See Jairath v. Dyer,* 154 F.3d 1280, 1282 (11th Cir. 1998) (recognizing

that "in *limited* circumstances, federal-question jurisdiction may also be available if a

---

[23]    For instance, the Defendants have neither acknowledged the four distinct wrongs that make up the tort of invasion of privacy under Alabama law nor identified one or more of these distinct wrongs under which Plaintiff's claim falls. (*See* Doc. 9). However, even assuming—what is most likely—that Clay's invasion of the right to privacy claim falls under the second branch of that tort—that is, "one who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public[,]" *Johnston, supra,* 706 So.2d at 703—the Defendants have made no showing whatsoever that any of the elements making up this tort would necessarily require this Court to consider whether the disclosures to the federal agent complied with federal law. In point of fact, when comparing the factual allegations of ¶ 8 of the complaint (Doc. 1, Exhibit 1, COMPLAINT, at ¶ 8 ("Plaintiff also avers that the Defendants, acting together with the federal agent, also caused Plaintiff's bank records to be displayed to other third parties without Plaintiff's knowledge or permission.")) with ¶ 13 of the complaint (*see id.* at ¶ 13 ("Plaintiff hereby repeats, re-alleges, and incorporates by reference the preceding paragraphs of this Complaint and further avers that the Defendant Bank and Nix, operating in conjunction and in concert with the currently unnamed federal agent, tortuously invaded and violated Plaintiff's right to privacy, under the common law of the state of Alabama.")), there can be little question but that Clay's invasion of right to privacy claim is directed solely to Defendants' alleged disclosures of her private banking information to the minimum of 8 to 10 third parties/public sources in the Dallas County community (none of whom were the federal agent who purportedly worked in concert with the Defendants to make the disclosures); therefore, no elements making up this tort would necessarily require this Court to consider whether the disclosures to the federal agent complied with federal law.

        And with respect to Plaintiff's breach of fiduciary duty claim, the Defendants have not shown how any of the elements of Clay's breach of fiduciary duty claim—that is, (1) the existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach—will necessarily require this Court (or the state court) to consider whether the disclosures to the federal agent complied with federal law. As aforesaid, the existence of a fiduciary duty/relationship in this case has nothing to do with any disclosures the Defendants made in this case and, therefore, obviously would not require the Court to consider whether the disclosures to the federal agent complied with federal law. And since breach may be demonstrated by the Defendants' disclosures of Plaintiff's private financial information to the minimum of 8 to 10 third parties/public sources referenced in the complaint, whether the disclosures to the federal agent complied with federal law would be of no moment. That the focus of Count Two, like Count One, is on the alleged disclosures made to the third parties in the Dallas County community is clear given that Count Two follows Count One and incorporates all preceding paragraphs in the complaint and, as well, specifically avers no federal causes of action are asserted in the complaint. However, even if the violation of federal regulations may be evidence of the breach of fiduciary duty under substantive principles of state law, the breach of fiduciary duty claims remains a state law claim because the mere presence of this insubstantial federal issue in this state cause of action, again, "does not automatically confer federal question jurisdiction." *Merrell Dow, supra,* 478 U.S. at 813, 106 S.Ct. at 3234. (Continued)

substantial, disputed question of federal law is a necessary element of a state cause of action." (emphasis supplied)). Instead, the Defendants simply "leap" from their conclusory suggestion that Plaintiff's claims necessarily raise or "place at issue a substantial question of federal law—whether the alleged disclosures to a federal agent complied with federal law[,]" (Doc. 9, at 3) to attempting to demonstrate that Clay's claims implicate a substantial question of federal law by stating in a conclusory manner that Plaintiff's claims "place at issue Defendants' disclosures of information to a federal agent," (*id.* at 5) which they say implicates a substantial question of federal law, namely the Annunzio-Wylie Act's requirement that Wells Fargo makes disclosures to a federal agent during the course of a federal investigation (*see id.* at 6-8; *id.* at 8 ("In light of this federal law, Plaintiff's claims specifically place at issue whether Defendants complied with federal law by making disclosures to the federal government and its agents during the course of a federal investigation and related legal process.")). The problem with Defendants' substantial question analysis, however, is that it is founded on the Annunzio-Wylie Act, 31 U.S.C. § 5318(g) (*see* Doc. 9, at 6-8), which "provides 'an affirmative defense to claims against a financial institution for disclosing an individual's financial records or account-related activity[,]'" *Hoffman v. Bank of America, N.A.,* 2006 WL 1360892, *8 (M.D. Fla. May 16, 2006), quoting *Lopez, supra,* 129 F.3d at 1191.[24]

_____

Finally, based on the foregoing, the Defendants have not in any manner demonstrated (and cannot demonstrate) that damages Plaintiff may have suffered in this case require the Court to consider whether the disclosures to the federal agent complied with federal law.

[24]     As well, lost in this translation, is the Defendants' failure to address specifically whether the purported federal issue is "actually disputed," *see Gunn v. Minton, supra,* 568 U.S. at 1065-66. And while this Court obviously need not address whether the federal issue is actually disputed, given the undersigned's determination that resolution of a federal question is (Continued)

And, as already established, "a defense which presents a federal question can not create removal jurisdiction." *Kemp, supra,* 109 F.3d at 712; *see also Vaden, supra,* 556 U.S. at 60, 129 S.Ct. at 1272 ("Federal jurisdiction cannot be predicated on an actual or anticipated defense.").[25]

In light of the foregoing, it is not necessary for the undersigned to address *Grable*'s fourth requirement, the Defendants having been unable to carry their burden of establishing that Plaintiff's state-law claims necessarily raise a stated federal issue that is actually disputed and substantial.[26] *See Gunn v. Minton, supra,* 568 U.S. at 258, 133

---

not necessary to Clay's case, mention is made here of this requirement because the Defendants must meet all four requirements in order to establish that jurisdiction in this Court is proper, *Gunn v. Minton, supra,* 568 U.S. at 258, 133 S.Ct. at 1065, and they simply have not done so because their response in opposition to the motion to remand makes no mention of the "actually disputed" requirement (*see* Doc. 9).

[25]    As alluded to earlier, this is so even if this affirmative defense is considered an ordinary preemption defense. *Compare Caterpillar, Inc., supra,* 482 U.S. at 393, 107 S.Ct. at 2430 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption [as opposed to the doctrine of complete preemption], even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.") *with Geddes, supra,* 321 F.3d at 1353 ("[A] federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption.").

[26]    Finally, the undersigned cannot agree with the Defendants that the artful pleading doctrine supports this Court exercising jurisdiction over this action. (*See* Doc. 9, at 10-13.) "The doctrine of artful pleading . . . is a narrow exception to the rule that the plaintiff is the master of his or her complaint. Artful pleading occurs when a plaintiff, in an attempt to avoid federal jurisdiction, characterizes a claim as a state claim when the real nature of the claim is federal." *Four Way Plant Farm, Inc. v. National Council for Compensation Ins. (NCCI),* 894 F.Supp. 1538, 1542 (M.D. Ala. 1995).

Here, the Defendants specifically contend that "[t]he case of *Wheeler v. Thomas F. White & Co., Inc.* [] provides persuasive support that this Court has jurisdiction over Plaintiff's claims [under the artful pleading doctrine]. *See* CV 97-9564-WDK, 1998 WL 239266[] (C.D. Cal. March 19, 1998)." (Doc. 9, at 10; *see also id.* at 10-12.) Initially, the undersigned simply notes that *Wheeler* is not binding law in this Circuit. *See Barcliff, LLC v. M/V Deep Blue Imo No. 9215359,* 2017 WL 5894901, *4 (11th Cir. Nov. 30, 2017) (citing *United States v. Rosenthal,* (Continued)

S.Ct. at 1065 (recognizing that all four requirements must be met before federal jurisdiction is proper).[27]

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that Plaintiff's motion to remand (Doc. 7) be **GRANTED** and that this cause be remanded to the Circuit Court of Dallas County, Alabama from whence it came.

---

763 F.2d 1291, 1294 n.4 (11th Cir. 1985) for the proposition that "any decision of another circuit, published or unpublished, is only of persuasive value.")). Moreover, in *Wheeler*, the court found that all of plaintiff's causes of action were predicated on the defendants' reporting of plaintiff's income using his Social Security number, as the defendants were required by federal law to do, *see Wheeler,* at *2; however, here, as previously explained/established, Plaintiff's causes of action are not predicated on the Defendants' disclosures to the federal agent but, instead, are predicated on the Defendants' alleged disclosures to a minimum of or 8 to 10 third parties/public sources in the Dallas County community, disclosures that have nothing to do with federal law. Thus, *Wheeler* is not binding nor is it persuasive. And since the artful pleading doctrine "does not convert legitimate state claims into federal" claims, *Carpenter v. Wichita Falls Independent School District,* 44 F.3d 362, 367 (5th Cir. 1995), the Plaintiff's legitimate state-law claims set forth in her complaint cannot be converted into federal claims by the Defendants' citation to the artful pleading doctrine.

[27]    Because there is no federal question jurisdiction permitting removal, this Court obviously need decline to address whether supplemental jurisdiction exists over Clay's state-law claims. *MWS, Inc. v. Knight Technology Servs. Inc.,* 2012 WL 3435043, *5 n.3 (M.D. Ala. Aug. 14, 2012) (declining to address whether supplemental jurisdiction existed over state law claims asserted in MWS's original complaint where there was no federal question jurisdiction permitting removal); *see also* 28 U.S.C. § 1367(a) (statute itself recognizes that a determination that a district court has original jurisdiction precedes whether supplemental jurisdiction exists over state law claims, in specifically providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (finding that "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court. . . . [A]ssuming substantiality of the federal issues, there is power in federal courts to hear the whole." (footnote omitted)).

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 13th day of December, 2017.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**